| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------X<br>In re:<br><br>Hancock Street SML LLC,<br><br><br>              Debtor.<br>-----------------------------------------------------------X | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 1-14-45491-nhl |

## DECISION ON APPLICATIONS FOR PROFESSIONAL FEES AND EXPENSES

<u>Appearances</u>:

| | |
|---|---|
| Isaac Nutovic<br>Nutovic & Associates<br>261 Madison Avenue<br>26th Floor<br>New York, NY 10016<br>*Attorney for David Rosenbaum* | Gabriela P. Cacuci<br>New York City Law Department<br>100 Church Street, 5th Floor<br>New York, NY 10007<br>*Attorney for the City of New York* |
| Gail E. Spindler<br>Trop Spindler LLP<br>19-02 Whitestone Expressway<br>Suite 202<br>Whitestone, NY 11357-3099<br>*Attorney for the Debtor* | Aviva Francis<br>Evan M. Newman<br>Newman Law, P.C.<br>377 Pearsall Avenue<br>Suite C<br>Cedarhurst, NY 11516<br>*Attorneys for Creditor JFKYYZ BS6 L.P.* |
| William Curtin<br>Rachel Weinberger<br>Office of the United States Trustee<br>201 Varick Street, Suite 1006<br>New York, NY 10014<br>*Attorneys for the United States Trustee* | Sharon Scott<br>792 Dekalb Avenue<br>Brooklyn, NY 11221<br>*Pro se* Creditor |

NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Before the Court are two applications for allowance and reimbursement of professional fees and expenses pursuant to 11 U.S.C. §§ 330, 503(b), and 105.[1] The applicants are David Rosenbaum ("Rosenbaum"), an unsecured creditor of debtor Hancock Street SML LLC ("Hancock"), and Trop Spindler LLP ("Trop Spindler"), counsel for Hancock. For the reasons set forth below, the Court grants Trop Spindler's application in part, and denies Rosenbaum's application in full.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

On October 29, 2014 (the "Filing Date"), when Hancock filed its voluntary chapter 11 bankruptcy petition, it owned six residential properties in Brooklyn (the "Properties"). Chap. 11 Voluntary Pet., ECF No. 1. In 2007, the City of New York (the "City") deeded the Properties to Hancock for $6.00 as part of an urban renewal project. Mot. to Auth./Direct, ECF No. 205; First Mot. for Costs/Att'y Fees, ECF No. 228. The City Department of Housing Preservation and Development imposed various restrictions on the transfer; in relevant part, they required Hancock to rehabilitate the Properties in a fixed time and sell them to City residents who agreed to occupy them as their primary residence for 20 years (the "HPD Restrictions"). *Id.* To enforce these obligations, Hancock granted the City an enforcement mortgage in the amount of

---

[1] Title 11 of the United States Code will also be referenced throughout by the terms "the Code" or "the Bankruptcy Code."

$1,862,000—the appraised value of the Properties at the time of the conveyance. Obj. to Prof. Fees, ECF No. 236.

At that same time, the Community Preservation Corporation ("CPC") provided Hancock with two loans of $3,348,311 and $239,000, which were to serve as rehabilitation financing. CPC secured its loans with blanket mortgages against the Properties (the "CPC Mortgages"). Mot. to Auth./Direct, ECF No. 205. The City agreed to subordinate its mortgage and the HPD Restrictions to the CPC Mortgages. *Id.*

From 2011 to 2012, Hancock entered into four contracts of sale—each subject to the HPD restrictions and liens—with certain individuals, including Rosenbaum. *Id.*; Obj. to Prof. Fees, ECF No. 236. Rosenbaum, like the other contract vendees, paid a deposit into escrow, but the contracts remained executory as of the Filing Date. Chap. 11 Voluntary Pet., ECF No. 1; Mot. to Auth./Direct, ECF No. 205.

Hancock eventually defaulted on the CPC Mortgages by failing to complete the project and pay off the loans, prompting CPC to commence foreclosure proceedings in Kings County Supreme Court. On September 5, 2014, that court entered a final judgment of foreclosure and sale against Hancock in the amount of $4,044,444.41. *Id.*; First Mot. for Costs/Att'y Fees, ECF No. 228. CPC subsequently assigned the foreclosure judgment to JFKYYZ BS6 L.P. ("JFK"). Mot. to Auth./Direct, ECF No. 5; Obj. to Prof. Fees, ECF No. 236.

The Filing Date occurred one day prior to the scheduled foreclosure sale of the Properties. In response, JFK's predecessor in interest, 10329 Rochester Holdings (the "Mortgagee"), filed a motion to dismiss the bankruptcy case, which the City joined and Rosenbaum opposed. Mot. to Dismiss, ECF No. 10; Joinder of the City, ECF No. 72; Opp'n to Mots., ECF No. 95. Rosenbaum also filed a plan and disclosure statement, and sought a

prospective buyer for the Properties who, under the plan, would purchase the Properties a private sale and in turn convey them to contract vendees for a redemption amount. Mot. to Auth./Direct, ECF No. 205.

JFK, the U.S. Trustee (the "UST"), the Debtor, the City, and contract vendee Shawnee Harris all opposed Rosenbaum's plan and disclosure statement. The crux of each objecting party's argument was that, although Rosenbaum nominally filed the proposed plan and disclosure statement, its true proponent was Abraham Grunbaum ("Grunbaum"), an unaffiliated third-party investor who was ineligible to file a plan under 11 U.S.C. § 1121(c). *E.g.*, Obj. of the U.S. Trustee, ECF No. 224. The objections pointed to an "Agreement to Pay Legal Fees," which Rosenbaum's counsel had executed with Grunlow LLC, through Grunbaum. Obj. of the City, ECF No. 223. The agreement provided that Grunlow LLC would pay Rosenbaum's legal fees, "strictly conditioned on all or part of the Debtor's Properties being transferred to Grunlow LLC." *Id.* The Court did not approve or confirm Rosenbaum's proposed disclosure statement or plan.

Shortly after filing his proposed plan and disclosure statement, Rosenbaum also filed a motion to expunge the City's proof of claim number 14. Mot. to Obj./Reclassify/Reduce/ Expunge Claims, ECF No. 101. Rosenbaum argued that the City had contractually agreed to eliminate the relevant claims when it conveyed the Properties to Hancock. *Id.* The Court granted the motion, which the City did not oppose. Ord. Exp. Claim, ECF 140.

JFK subsequently filed a plan that allowed for Rosenbaum and the other contract vendees to purchase the properties for which each had previously contracted. The purchases would be subject to the HPD Restrictions and subsidies, and the sale price for each derived from a formula utilizing present appraised values. *See* Order Confirming Ch. 11 Plan, ECF No. 172-2. The plan

further provided for a public auction of any remaining properties. *Id.* The Court ultimately confirmed JFK's plan. Am. Order Appr. Discl. Statement, ECF No. 144.

## PROCEDURAL HISTORY

Rosenbaum now moves pursuant to §§ 105 and 503(b)(3), (4) of the Bankruptcy Code for allowance of his counsel's fees of $46,121.25 as an administrative expense. This amount includes $43,417.50 for opposing efforts to dismiss the case and filing a proposed plan and disclosure statement, and $2,703.25 for objecting to the City's proof of claim number 14. Mot. to Auth./Direct, ECF No. 205. Trop Spindler moves pursuant to §§330(a) and 503(b) of the Code for approval of its fee application in the amount of $106,640, and expenses of $4,508.28 incurred in its representation of Hancock. First Mot. for Costs/Att'y Fees, ECF No. 228.

The UST, the City, and Hancock oppose Rosenbaum's application. Their objections focus on the allegation that Rosenbaum proceeded in the interests of himself and Grunbaum rather than those of the estate. In addition, they argue that his plan was unconfirmable. Regarding the claim objection, the City contends that it filed the claim "in error," and that Rosenbaum's counsel could have resolved the error by simply communicating with the City's counsel. Obj. of the City, ECF No. 223.

The UST, the City, and JFK oppose Trop Spindler's application. They argue that Trop Spindler's services did not benefit the estate, that Hancock failed to perform its basic duties as debtor-in-possession, and that it failed to obey numerous court orders, among other things. The City further argues that Trop Spindler and Hancock did not cooperate in allowing the City access to the Properties to determine amounts due for municipal water use, and that this led to a tardy discovery of theft of services.

## LEGAL STANDARDS/ANALYSES

**1. Professional Fees and Expenses of Trop Spindler**

The Court first reviews Trop Spindler's request for attorney's fees pursuant to 11 U.S.C. § 330.[2] Section 330(a)(1) provides:

> (1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, . . . an examiner, . . . or a professional person employed under section 327 or 1103—
> > (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
> > (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330.

Subsection (a)(3) sets forth the reasonableness standard:

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
> > (A) the time spent on such services;
> > (B) the rates charged for such services;
> > (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> > (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> > (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> > (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

---

[2] Trop Spindler also cites § 503(b)(3)(D) in its application, but this appears to have been in error, since this provision applies only to "a creditor, an indenture trustee, and equity security holder, or a committee . . . ." Nor does Trop Spindler make any arguments based on this provision. Accordingly, the Court reviews its application pursuant to § 330 and not § 503.

11 U.S.C. § 330(a)(3). Subsection (a)(4)(A) outlines when compensation shall not be allowed:

> (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—
>     (i) unnecessary duplication of services; or
>     (ii) services that were not—
>         (I) reasonably likely to benefit the debtor's estate; or
>         (II) necessary to the administration of the case.

*Id.*

The attorney bears the burden of demonstrating the reasonableness of his fees. *In re Chin Kim*, No. 10-77169-ast, 2012 WL 3907490, at *4 (Bankr. E.D.N.Y. 2012). That burden requires the submission of detailed time records that might permit the Court to assess their reasonableness. *In re 29 Brooklyn Ave., LLC*, 548 B.R. 642, 652 (Bankr. E.D.N.Y. 2016).

In making such assessment, the Court is guided by the following principles. Within the Second Circuit, it is well established that attorneys cannot be compensated from the estate for services rendered before the effective date of their retention—here, prior to the Filing Date. *In re Moon*, 385 B.R. 541, 549 (Bankr. S.D.N.Y. 2008). The Court may also reduce or deny a fee application based on post-petition services "if th[ose] underlying services conferred no real benefit on the estate." *In re Keene Corp.*, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997). The Court should not apply this test in hindsight, but rather should ask whether a reasonable lawyer would have done the same under the same circumstances. *Id.*

Eastern District General Order 613 (the "General Order") provides additional guidelines for fee applications within the Eastern District. It requires disclosure of names and hourly rates of all professionals and paraprofessionals who billed time. Furthermore, time entries must be done "contemporaneously with the services rendered in time periods of tenths of an hour."

General Order 613, at ¶ A(4)(vii). Each service should be noted in detail with a separate time entry, and services may not be "lumped" together unless they total a de minimis amount of time. *Id.* Noncompliance with these guidelines may result in a reduction of fees awarded. *29 Brooklyn Ave.*, 548 B.R. at 652.

The Court finds that Trop Spindler has failed to meet several of the requirements just outlined, and that a reduction of its fees is therefore required. First, Trop Spindler seeks $5,950 in compensation for services rendered prior to the Filing Date, and thus its fees must be reduced in that amount. *See In re Moon*, 385 B.R. at 549 ("An attorney whose retention has not been approved by the bankruptcy court prior to the time that the attorney renders services is not within the class of persons that is eligible for compensation from the estate.").[3]

Second, several of Trop Spindler's time entries are vague and therefore not in compliance with the General Order.[4] The General Order requires that "[t]ime entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication." General Order 613, at ¶ A(4)(vii). Absent such detail, it becomes difficult—if not altogether impossible—to determine whether an activity is both reasonable and necessary; and where no such determination can be made, there can be no award for the work done. *See In re Hudson*, 364 B.R 875, 880 (Bankr. N.D.N.Y. 2007). Accordingly, "[e]ntries that

---

[3] For the Court to find otherwise would be to jeopardize Trop Spindler's entitlement to any fees whatsoever. As the UST points out in its objection to Trop Spindler's application, fees for pre-petition work would prevent the firm from maintaining its "disinterested person" status, which, in turn, would disqualify it from serving Hancock at all. *See* Trustee's Obj. 7–8, ECF No. 239. One who is a creditor is not a "disinterested person." *See* 11 U.S.C. § 101(14)(A). In order to be appointed to serve a debtor under § 327(a) of the Bankruptcy Code, a professional person must be disinterested in that sense, and cannot hold an interest adverse to the estate. 11 U.S.C. § 327(a) ("Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."). If Trop Spindler were to request compensation for fees that accrued prior to the Filing Date, this pre-petition claim would make it a creditor, and therefore no longer disinterested. In turn, Trop Spindler would become unqualified under § 327(a), and disqualify itself from any fees for post-petition services to which it might otherwise be entitled.

[4] The Court determines that the following "Slip IDs" are vague: 32659, 32660, 32750, 32793, 32795, 32842, 32934, 32977, 33003, 33101, 33123, 33758, 33770, 33915, 34021, 34195, 34427, 34504, 34547, 34559, 34695.

7

contain such vague characterization of the services performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to' fail to adequately describe the services provided and are routinely disallowed." *In re Hirsch*, No. 02-17966, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. Dec. 11, 2009). Here, numerous entries in Trop Spindler's time sheets fit this description, noting only, for example, that a meeting was taken, or that research and writing were done, but providing no further context. Such vague entries total $3,200, and the Court hereby reduces the firm's fee request based on such entries by one half—for a reduction of $1,600.

Third, Trop Spindler has also "lumped" several of its time entries,[5] totaling $32,200, in violation of the General Order. Similar to the prohibition on vague entries, single entries must not be "lumped"—that is, they cannot include several discrete activities unless the aggregate time spent on such activities does not exceed one half-hour. *See* General Order No. 613, at ¶ A(4)(vii). Where the activities do exceed that time limit, they must be clearly identified, and indicate: the date that the activity was performed; who performed the task along with that person's rate and experience; and the precise amount of time spent on its performance. *Id.* Finding entries that do not confirm to this rule, the Court similarly reduces such "lumped" fees by half—for a reduction of $16,100.

Fourth, the timesheets contain entries for undisclosed individuals, despite the General Order's guideline noted above—that the "names and hourly rates of all professionals and paraprofessionals who billed time" be provided, along with details of those individuals' rates.[6]

---

[5] These entries include: 32780, 32935, 32972, 32976, 32992, 33006, 33019, 33085, 33088, 33104, 33135, 33159, 33192, 33217, 33230, 33265, 33458, 33512, 33595, 33604, 33693, 33703, 33706, 33795, 33882, 33883, 33999, 34035, 34044, 34067, 34088, 34157, 34324, 34413, and 34775.
[6] These entries include: 32655, 32682, 32851, 32904, 33040, 33081, 33101, 33222, 33233, 33235, 33246, 33322, 33384, and 33705.

General Order 613, at ¶ A(1)(iii) ("Names and hourly rates of all applicant's professionals and paraprofessionals who billed time, explanation of any changes in hourly rates from those previously charged, and statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11."). Here, Trop Spindler's application indicates that either Gail E. Spindler, Esq. or Gary M. Trop, Esq. rendered the services described in the billing records. First Mot. for Costs/Att'y Fees, ECF No. 228. However, a review of those records discloses entries attributed to "Greg" and "Chris"—individuals who are otherwise left unidentified. These two undisclosed individuals collectively billed $21,140 in services; accordingly, the fee request shall be further reduced by that amount. In total, Trop Spindler's timesheet deficiencies mandate a reduction of $44,790, leaving $61,850.

Unfortunately, the Court has determined that a further reduction from that amount is appropriate. As noted above, the applicant bears the burden of proving the reasonableness of compensation from a bankruptcy estate. *In re JLM, Inc.*, 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997) (citing *Woods v. City Nat'l Bank & Tr. Co.*, 312 U.S. 262, 267–68 (1941)). Section 330 gives bankruptcy courts discretion "to consider the 'quality and value in the professional services provided.'" *In re Tribeca Market, LLC*, 516 B.R. 254, 275 (Bankr. S.D.N.Y. 2014) (quoting *In re Iannochino*, 242 F.3d 36, 47 (1st Cir. 2001). In addition, bankruptcy courts are given "wide discretion in determining reasonable fee awards." *Id.* at 274 (quoting *In re JLM, Inc.*, 210 B.R. at 23).

A review of the services provided reveals the following. As noted in the objections to Trop Spindler's fee application, JFK performed the bulk of duties that are typically performed by a debtor-in-possession. For instance, JFK proposed a disclosure statement and plan that the Court

ultimately approved and confirmed, and then shepherded the plan through the effective date. Indeed, after confirmation, JFK expended considerable time and effort ensuring the plan's implementation; it worked to retain a broker to sell the Properties, coordinated with that broker once retained, and then led efforts to remove squatters from the Properties. JFK also helped to ensure that plan deadlines were met, including vendee contract dates.

In contrast, Trop Spindler proposed a plan that failed to address basic legal issues in the case, such as HPD's secured claim or the rights of contract vendees, and was dependent upon a speculative and undocumented investor loan of $400,000—features that made the plan patently unconfirmable. Trop Spindler also failed to notice either the plan or disclosure statement for a hearing or otherwise take steps toward confirmation. In light of these facts, the Court concludes that the plan and disclosure statement were not "reasonably likely to benefit the estate" under § 330(a)(4)(A)(ii)(I).

Other aspects of Trop Spindler's performance were also deficient. Notwithstanding being prompted by the Court and other parties, the firm failed to timely retain a broker, and was ineffective in causing Hancock to properly secure the Properties from trespassers and squatters. The firm was similarly unable to convince its client to comply with court orders and other requirements of a chapter 11 debtor-in-possession including filing monthly operating reports. For all of these reasons, the Court concludes that a further reduction is justified, such that the reasonable compensation for services rendered by Trop Spindler is approved in the amount of $30,925. Finally, the Court finds that Trop Spindler's expenses are reasonable and properly documented, and grants them in the full amount of $4,508.28.

**2. Rosenbaum's Application for Administrative Expenses**

Rosenbaum contends that he should be entitled to legal fees as an administrative expense under 11 U.S.C. § 503(b). Section 503(b) provides, in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including . . .
> > (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . .
> > > (D) a creditor . . . or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title . . .
> > (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . ."

11 U.S.C. § 503(b).

Courts in this circuit have considered the following factors in determining whether a party has made a "substantial contribution" under § 503(b): "(1) whether the services benefitted the estate itself or all of the parties in the bankruptcy case; (2) whether the service resulted in a direct, significant, and demonstrably positive benefit for the estate; and (3) whether the services duplicated the efforts by others." *Bedford JV, LLC v. Sky Lofts, LLC*, Nos. 12-CV-5850 (DLI), 12-CV-5851 (DLI), 2013 WL 4735643, at *4 (E.D.N.Y. Sept. 3, 2013). A party seeking administrative expenses under § 503 must prove substantial contribution by a preponderance of the evidence. *Id.* "Mere conclusory statements" regarding one's substantial contribution are insufficient for such involvement to be deemed compensable under section 503(b). *In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989); *see also In re R.L. Adkins Corp.*, 505 B.R. 770, 780 (Bankr. N.D. Tex. 2014) ("An applicant must show a causal connection between

11

its services and the substantial contribution, and mere conclusory statements will not suffice."). Corroborating testimony by a disinterested party may be a "decisive factor" in awarding compensation on a substantial contribution basis. *U.S. Lines*, 103 B.R. at 430.

Circumstances entitling a party to a substantial contribution expense are "case-specific, fact-intensive—and unusual." *In re S & Y Enters., LLC*, 480 B.R. 452, 464 (Bankr. E.D.N.Y. 2012). A party that successfully makes this showing under § 503(b) is entitled to payment for reasonable and necessary attorney's fees of the creditor as an actual and necessary administrative expense. *Matter of Buckhead Am. Corp.*, 161 B.R. 11, 15 (Bankr. D. Del. 1993). A substantial contribution "must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008). Creditors are presumed to act in their own interest and thus face "an especially difficult burden" in meeting the substantial contribution test. *Id.* However, self-interest in and of itself does not preclude reimbursement. *S & Y Enters.*, 480 B.R. at 463 (citing *In re AmFin Fin. Corp.*, 468 B.R. 827, 833 (Bankr. N.D. Ohio 2012)). Compensation under § 503 is "rare" and requires "extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate." *Id.*; *In re United Merchs. & Mfrs., Inc.*, No. 97 CIV. 5437(DC), 1999 WL 4929, at *2 (S.D.N.Y. Jan. 5, 1999), *aff'd*, 198 F.3d 235 (2d Cir. 1999); *see also In re Villa Luisa, LLC*, 354 B.R. 345, 348 (S.D.N.Y. 2006) ("Courts . . . have looked at whether there has been a contribution that is considerable in amount, value and worth, which directly, demonstrably and materially contribute [sic] to the debtor's reorganization.").

Cases finding that a creditor made a "substantial contribution" generally involve a creditor playing a leadership role that would normally be expected of an estate-compensated professional. *In re Bayou Grp., LLC*, 431 B.R. 549, 562 (Bankr. S.D.N.Y. 2010). This includes

activities such as active facilitation and negotiation of a confirmed plan, or efforts to oppose a plan that resulted in a more favorable one. *Id.* (citing *In re Granite Partners*, 213 B.R. 440, 446–47 (Bankr. S.D.N.Y. 1997)).

Here, Rosenbaum argues that his legal fees are entitled to administrative priority because of his substantial contribution in this case. He first points to the work he did filing a plan and disclosure statement, as well as opposing dismissal of the case, and argues that, though his plan and disclosure statement were not approved, the approved plan "would never have been proposed if not for Rosenbaum opposing the dismissal of this case and demonstrating that a chapter 11 plan was legally and economically feasible." Mot. to Auth./Direct, ECF No. 205. But for these efforts, he explains, the case likely would have been dismissed, and that the plan and disclosure statement he proposed "served as a catalyst for events which led the Mortgagee to file, and for the City to support, the plan confirmed by the Court." Mot. to Auth./Direct, ECF No. 205. Rosenbaum contends that the confirmed plan and disclosure statement were very similar to his, except that they provided for a public auction rather than a private sale of the Properties.

Rosenbaum also contends that he should be entitled to an administrative claim for filing a motion to expunge the City's proof of claim number 14. According to Rosenbaum, this claim "threatened to make any plan non-confirmable because it asserted a secured lien status ahead of the Mortgagee's claim." Mot. to Auth./Direct, ECF No. 205.

Rosenbaum has not met his heavy burden of demonstrating that his efforts made a substantial contribution for section 503(b) purposes. As to the first factor noted above—whether the actions benefitted the creditor or all creditors—Rosenbaum opposed dismissal of the case and concurrently filed a proposed plan and disclosure statement that involved a private sale of the Properties with no means of ensuring the highest and best prices to benefit the estate. The

13

proposed plan and disclosure statement also provided for the elimination of the HPD Restrictions as "a condition to the effectiveness of the Plan." Obj. to Discl. Statement, ECF No. 107. This indicates that Rosenbaum's opposition to dismissal of the case, as well as his filing of a plan and disclosure statement, were done primarily for his own benefit rather than that of the estate generally.

Regarding the second factor—whether there was a direct benefit to the estate—Rosenbaum's unapproved plan and disclosure statement did not "directly" or "demonstrably" lead to tangible benefits to the estate. *See Bedford*, 2013 WL 4735643, at \*4; *see also Bayou Grp.*, 431 B.R. at 560 ("The integrity of section 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate."). Rosenbaum's conclusory allegation that his plan and disclosure statement served as the "catalyst" that led JFK to file a plan, which the Court then confirmed, is not sufficient to carry its difficult burden under section 503(b). Moreover, Rosenbaum's proposed plan and disclosure statement received a chorus of objections on both legal and economic grounds, so it is unlikely that his submissions "demonstrated that a chapter 11 plan was legally and economically feasible," as Rosenbaum asserts. Mot. to Auth./Direct, ECF No. 205.

In addition, Rosenbaum's contention that his services prevented a dismissal of the case does not demonstrate a substantial contribution. At the time the Court was considering the motion to dismiss, there was significant uncertainty as to the values of the Properties, and the Court directed appraisals and an evidentiary hearing on the issue. *See* Mot. to Dismiss Case, ECF No. 10 and related docket entries. The Court was therefore unlikely to summarily dismiss the case when the Properties had the potential to realize significant value for the estate. At most,

Rosenbaum has demonstrated that any benefit resulting from his efforts to oppose dismissal of the case and file his own plan and disclosure statement were merely "incidental," and "ar[ose] from activities the [he] pursued in protecting his . . . own interests," *see Dana Corp.*, 390 B.R. at 108, and therefore insufficient to demonstrate a substantial contribution under § 503(b).

Nor has Rosenbaum demonstrated an entitlement to an administrative claim based on his efforts to expunge the City's lien. This is because Rosenbaum's motion, which the City did not oppose, did not constitute "extraordinary creditor action" that would entitle him to an administrative claim. *See Bayou Grp.*, 431 B.R. at 560; *see also In re 9085 E. Mineral Office Bldg., Ltd.*, 119 B.R. 246, 250 (Bankr. D. Col. 1990) ("[T]his Court agrees with those cases which have held that compensation must be strictly limited to those cases in which *unusual* creditor actions led to *demonstrated* benefits to either creditors as a whole, the debtor or the estate." (quoting *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 690 (Bankr. S.D. Cal. 1988))). Nor was Rosenbaum's unopposed motion a "key organizational aspect," without which the movement toward reorganization would have been substantially diminished. *See In re AMR Corp.*, No. 11-15463 (SHL), 2014 WL 3855320, at *2 (Bankr. S.D.N.Y. Aug. 5, 2014). According to the City, the claim was filed in error and could have been resolved with a phone call. Obj. of the City, ECF No. 223.

The Court further notes that Rosenbaum has provided no corroborating testimony from a disinterested party in favor of his application. *See U.S. Lines*, 103 B.R. at 430. His application has instead received vigorous objections from the UST, the City, and Hancock. Accordingly, Rosenbaum's application is denied.[7]

---

[7] Despite the above discussion, the Court still wishes to note the efforts taken by Isaac Nutovic, Esq. on behalf of his client. Though not legally sufficient in the context of the instant application, such efforts are nevertheless appreciated, and in many ways helped to move this case forward.

**CONCLUSION**

For the reasons stated above, Trop Spindler's application is granted in the amount of $30,925 for legal fees and $4,508.28 for expenses. Rosenbaum's application is denied. A separate order will issue.



Dated: October 25, 2016  　　　　　　　　　　　　　　　　　Nancy Hershey Lord
　　　　Brooklyn, New York　　　　　　　　　　　　　　United States Bankruptcy Judge